**In re WESTERN URETHANES, INC., Debtor.**

**Bankruptcy No. 85 B 5007 G.**

United States Bankruptcy Court, D. Colorado.

May 29, 1986.

244

Leslie C. Cleveland, Bourke and Jacobs, P.C., Denver, Colo., for American Motorist Ins. Co.

C. Vincent Phelps, Gaunt, Dirrim, Coover & Phelps, P.C., Brighton, Colo., for United Bank of Brighton.

## MEMORANDUM OPINION

CHARLES E. MATHESON, Bankruptcy Judge.

THIS MATTER came on for hearing before the Court on a Motion filed by the United Bank of Brighton seeking an order requiring the Trustee to pay over cash collateral in which the Bank claimed a security interest. An objection to the Bank's request was filed by American Motorists Insurance Company by its managing general agent, Al Barker Insurance. The case was presented on stipulated facts between the Bank and the Insurance Company.

Prior to the filing of this bankruptcy case, the Debtor had a contract with John W. Cowper Company to provide construction services in connection with a construction project for Mountain Bell. American Motorists Insurance Company issued a labor and materials payment bond and a performance bond on behalf of the Debtor and in favor of John W. Cowper Company. As consideration for the issuance of the bonds, the Debtor executed a general agreement of indemnity dated July 23, 1984, in which the Debtor agreed to indemnify the Insurance Company for all losses under the bonds and assigned to the Insurance Company all of the Debtors rights in contract funds in the event it defaulted in the performance of the contract. The Insurance Company did not perfect its interest in those funds by filing a financing statement in the usual form required by the Uniform Commercial Code.

In July of 1985, the Debtor submitted an application for a progress payment to the John W. Cowper Company which listed a request for payment for Dex-O-Tex Topping in the amount of $7,902.00. That amount represented an account due to E.G. Renner and Associates, which was the supplier of the Dex-O-Tex Topping and which was owed by Debtor the sum of money which the Debtor sought by way of its progress payment. The progress payment request also carried other items making the total amount of the request $8,902.00. The

Trustee for the Debtor received the check and deposited the same in her trustee account on October 18, 1985.

The Debtor failed to pay E.G. Renner and Associates the amount due for the Dex-O-Tex Topping and that firm, accordingly, recorded a statement of mechanics lien against the Mountain Bell project. The Insurance Company, then, pursuant to its bond, paid E.G. Renner and Associates and discharged the lien.

The United Bank of Brighton has a perfected security interest in "all accounts receivable now existing or hereafter created" of the Debtor. It made its demand on the Trustee to pay over the $8,902.00, together with other funds held by the Trustee, claiming the same to be accounts receivable and, therefore, cash collateral covered by the Bank's security interest. The Insurance Company objected and asserted a prior and superior right to the monies.

Under the Uniform Commercial Code, as it is in effect in Colorado, a security interest in accounts receivable is "perfected when it has attached and when all steps for perfection have been taken". C.R.S. 1973, § 4-9-303. Attachment does not occur unless the debtor has "rights" in the collateral. C.R.S. 1985, sup., § 4-9-203(1). The Insurance Company argues that the Bank's security interest has not attached to the monies paid to the Debtor since the Debtor received the funds in a trust relationship, and, thus, did not have "rights" in the collateral.

Colorado has an explicit statute which establishes a trust as to funds disbursed to a contractor or subcontractor. That statute, C.R.S. 1973, § 38-22-127 provides that any funds disbursed through a contractor or subcontractor shall be

> ... held in trust for the payment of the subcontractors, material suppliers, or laborers who have furnished materials, services, or labor, who have a lien, or may have a lien, against the property, or who claim, or may claim, against a principal and surety under the provisions of this article and for which such disbursement was made.

That statute has been recognized to create an express trust, the breach of which by a contractor receiving such funds, bars discharge pursuant to 11 USC § 523(a)(4). *In re Specialized Installers, Inc.*, 12 B.R. 546 (Bkrtcy.Colo.1981). It has also been expressly recognized that since a trust relationship is established the contractor, as the Debtor in this case, does not have "rights" in the funds paid to it to which the interest of a secured party, such as the Bank, could attach. *First Commercial Corp. v. First National Bankcorp., Inc.*, 572 F.Supp. 1430 (D.Colo.1983).

The statute contains an exception. It provides, in subsection (3):

> If the contractor or subcontractor has furnished a performance or payment bond or if the owner of the property has executed a written release to the contractor or subcontractor, he need not furnish any such bond or hold such payments or disbursements as trust funds, and the provisions of this section shall not apply. C.R.S. 1973, § 38-22-127(3).

In the instant case, the Debtor, as the subcontractor, furnished a performance and payment bond. Having done so, the Debtor was excused by the terms of the statute from holding disbursements received as trust funds, and the provisions of the statute do not apply.

There appears to be a valid policy supporting the application of the statute as written. When a contractor, such as the Debtor in this case, is required to post a bond on a construction project, he must find a bonding company which will be willing to issue the bond. That bonding company is in a position to protect its interests and contract for protection in the event the contractor defaults and liens are filed. Indeed, the Insurance Company, in the present case, did so and obtained an express indemnity agreement from this Debtor, pursuant to which the Debtor assigned his rights in contract proceeds to the Insurance Company to protect it in the event of default. Further, the Insurance Company has been paid a premium for incurring the risk of issuing the bond. Conversely, indi-

vidual suppliers may have little bargaining leverage with a contractor to gain protection other than the protection afforded them by way of the normal mechanics liens. Thus, it appears to this Court that where a contractor, such as the Debtor, has obtained a surety bond and is later paid by the owner, the contractor receives those payments free of the express trust otherwise imposed by C.R.S. 1973, § 38–22–127.

As an alternative to the statutory express trust, which the Court has held does not apply in this case, the Insurance Company argues that the Debtor received the funds under a constructive trust and, therefore, did not have "rights" in the funds. It has been recognized that the constructive trust theory can be applied in cases involving the payment of funds by an owner to a contractor. *First Commercial Corp. v. First National Bankcorp., supra, In re Specialized Installers Inc., supra.*

In the *Specialized Installers* case the Court stated:

A constructive trust is an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the Defendant. It does not require an intent to create a trust. Neither actual fraud, nor the existence of a fiduciary relationship need be shown. However, something more than a mere creditor-debtor relationship must be proved. There must be a relationship of trust and confidence between the parties. In Colorado, a confidential relationship arises when one party has justifiably reposed confidence in another. This can incur in numerous ways, but the linchpin is that the transferor of property must be justified in his belief that the transferee will act in his best interest. *In re Specialized Installers, supra,* at page 553 (citations omitted.) [See also *First Commercial Corp. v. First National Bankcorp., Inc., supra; Harris v. Sentry Title Co., Inc.,* 715 F.2d 941 (5th Cir., 1983); *Chisholm v. Western Reserves Oil Co.,* 655 F.2d 94 (6th Cir., 1981).]

In the present case the relationship between the Debtor and the Insurance Company was memorialized by the agreements entered into between them in connection with the issuance of the bond. The governing agreement is the "General Agreement of Indemnity". That agreement explicitly defines the relationship between the Debtor on the one hand and the Insurance Company on the other, and was prepared by the Insurance Company to assure itself of protection in the event of a default by the Debtor. It provides that the Debtor will indemnify and save the Insurance Company harmless from every claim, demand, liability, cost, charge or expense which the Insurance Company may incur in consequence of having executed the bond. It gives the Insurance Company the right to take over performance of the contract in the event of any default by the Debtor. It then provides:

The Indemnitors [Debtor] hereby assign, transfer, and set over to the [Insurance] Company (to be effective as of the date of such bond or bonds, but only in the event of a default as aforesaid), all of their rights under the contract(s), including their right, title and interest in and to all subcontracts let in connection therewith; all machinery, plant, equipment, tools and materials which shall be upon the site of the work or elsewhere for the purposes of the contract(s), including all materials ordered for the contract(s), any and all sums due under the contract(s) at the time of such default, or which may thereafter become due, and the Indemnitors hereby authorize the Company to endorse in the name of the payee, and to receive and collect any check, draft, warrant or other instrument made or issued in payment of any such sum, and to disburse the proceeds thereof.

Nothing in the General Agreement of Indemnity speaks in terms of "trust". It does not provide that the Debtor would receive the proceeds in trust as a trustee for the Insurance Company to be used first for the purposes of paying the claims of suppliers or others who might have claims against the bond. It was an agreement

entered into in connection with the issuance of the bond for a fee, placing contract obligations on the Debtor and granting the Insurance Company specific rights and interests in the proceeds from the contract to protect it. Had the Insurance Company sought the protection of a trust, it could have been provided for in the agreement. Similarly, had the Insurance Company sought to protect itself against the intervening claims of a lender to the Debtor, it could have done so by filing appropriate financing statements evidencing its interest and position. It did not do that. There is nothing in the agreement which smacks of a fiduciary relationship. To the contrary, it is an "arms length" agreement, the terms of which were dictated by the Insurance Company. Under these circumstances, the Court is unable to find that fundamental fiduciary relationship which would give rise to the imposition of a constructive trust as between the Debtor and the Insurance Company.

 The Insurance Company argues further that there was a constructive trust relationship between the Debtor and John W. Cowper Company and the Debtor's suppliers such as E.G. Renner and Associates, relying on *In re Specialized Installers, supra,* to which the Insurance Company should be subrogated. The constructive trust relationship in the *Specialized Installers* case arose out of the "confidential relationship" imposed by the expectation of the owner that funds paid to contractor would be used to discharge the claims of suppliers having lien rights against the owner's property.

No such relationship exists in the instant case. Here, the owner and general contractor did not rely on the Debtor to pay the suppliers. Instead, a bond was obtained to assure payment. The owner and the suppliers were not at risk for the Debtor's nonperformance and the relationship between those parties and the Debtor contains none of the elements of "trust and confidence" which are necessary for the establishment of a constructive trust. Thus, even assuming the Insurance Compa-

ny would have a right of subrogation to the rights of a beneficiary of a constructive trust, such a trust relationship did not exist and there are no rights to which the Insurance Company can claim subrogation.

Accordingly, it is the judgment of this Court that the Debtor had "rights" in the accounts due it from John W. Cowper Company; the Bank's security interest attached to such accounts; and the Bank is entitled to the proceeds of such accounts collected by and in the hands of the trustee.