In re AMDURA CORPORATION, et al., Debtors.

AMDURA NATIONAL DISTRIBUTION COMPANY, "Andco" f/k/a FOK, Appellant,

v.

AMDURA CORPORATION, INC., Appellee.

Civ. A. No. 93–B–2044.

United States District Court, D. Colorado.

May 26, 1994.

Steven E. Abelman, Berryhill, Cage &
North, P.C., Denver, CO, and Albert Solo-
chek, Howard, Solochek & Weber, P.C., Mil-
waukee, WI, for appellant.

Merrie M. Kippur, McKenna & Cuneo, Denver, CO, David M. Bennett and James R. Prince, Dallas, TX, for appellee.

## MEMORANDUM OPINION AND ORDER

BABCOCK, District Judge.

Appellant Amdura National Distribution Company (Andco), a subsidiary of Amdura Corporation, Inc. (Amdura), seeks reversal of the Bankruptcy Court's September 13, 1993 order granting appellee Amdura's motion for summary judgment and denying Andco's cross-motion. At issue is whether the bankruptcy court committed any reversible error in denying Andco's request for turnover of funds pursuant to 11 U.S.C. § 542 in a bank account known as the "concentration account". The bankruptcy court held that Andco, based upon the undisputed facts in the case, could not meet its burden of showing that it owned or was entitled to the concentration funds. The issues are adequately briefed and oral argument will not materially aid their resolution. For all the reasons set forth below, the bankruptcy court's order will be affirmed.

### I.

In the underlying proceeding, Andco requested turnover of the balance in the concentration account in excess of $3.8 million ($1,047,875) plus interest (the disputed funds) as of the release date (November 29, 1991) pursuant to 11 U.S.C. § 542, and an injunction against Amdura's withdrawal of any of the funds remaining in that account. After a hearing was held, the bankruptcy court denied Andco's preliminary injunctive motion. Subsequently, Amdura moved for summary judgment on the ground that the undisputed facts establish that Andco's request for the turnover of funds from Amdura lacks legal or factual support. *See* Amdura's Summary Judgment Motion, p. 12. Andco filed a response and cross-motion. After a non-evidentiary hearing, Amdura's summary judgment motion was granted and Andco's cross-motion was denied.

### II.

In reviewing a bankruptcy court's decision, the district court functions as an appellate court and is authorized to affirm, reverse, modify or remand the bankruptcy court's ruling. Bankr.R. 8013. A bankruptcy court's summary judgment determination is examined de novo, viewing the record in the light most favorable to the nonmoving party. *Signet Bank v. Keyes,* 959 F.2d 245 (table) (10th Cir.1992); *Deepwater Investments, Ltd. v. Jackson Hole Ski Corp.,* 938 F.2d 1105, 1110 (10th Cir.1991); *see generally In re Burkart Farm & Livestock,* 938 F.2d 1114, .1115 (10th Cir.1991) (In reviewing bankruptcy court decisions, appellate courts apply the same standards of review that govern appeals in other cases.).

Summary judgment is appropriate only if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Bankr.R. 7056; Fed.R.Civ.P. 56(c). If a movant establishes entitlement to judgment as a matter of law given uncontroverted, operative facts contained in the documentary evidence, summary judgment will lie. *Mares v. ConAgra Poultry Co., Inc.,* 971 F.2d 492, 494 (10th Cir.1992). The operative inquiry is whether, based on all the documents submitted, a reasonable trier of fact could find by a preponderance of the evidence that the plaintiff is entitled to a verdict. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *Mares,* 971 F.2d at 494. Summary judgment should not enter if, viewing the evidence in a light most favorable to the nonmoving party and drawing all reasonable inferences in that party's favor, a reasonable jury could return a verdict for that party. *Anderson,* 477 U.S. at 252, 106 S.Ct. at 2512; *Mares,* 971 F.2d at 494.

The undisputed facts, viewed in the light most favorable to Andco, are accurately stated in the bankruptcy court's order. *See* Order, ¶¶ 1–35. I must note, however, that these "undisputed facts" are listed under the heading "Findings of Fact". Having reviewed the parties' appellate briefs and their summary judgment motions de novo, these material facts are undisputed notwithstand-

ing this heading error. Furthermore, the bankruptcy court's order expressly states in the "conclusions of law" section that these facts are undisputed. *See* "conclusions of law", ¶¶ D, F, and L.

### III.

■■■■ To be entitled to the turnover of the funds in the concentration account pursuant to § 542, Andco has the burden of proving, with clear and convincing evidence, that those funds are the property of Andco's bankruptcy estate. 11 U.S.C. § 542; *Evans v. Robbins,* 897 F.2d 966, 968 (8th Cir.1990) (citing *Maggio v. Zeitz,* 333 U.S. 56, 63–64, 68 S.Ct. 401, 404–05, 92 L.Ed. 476 (1948)); *In re Blinder, Robinson & Co., Inc.,* 140 B.R. 790, 793 (D.Colo.1992). This determination is made as of the petition date. *See generally In re Sommer,* 28 B.R. 95, 96 (Bankr.D.Colo. 1983); *In re Reed,* 940 F.2d 1317, 1332 (9th Cir.1991). Bankruptcy courts must look to state law to determine the nature and extent of the property interest held by the debtor and creditors, unless some identifiable federal interest requires otherwise. *Butner v. U.S.,* 440 U.S. 48, 54, 99 S.Ct. 914, 917, 59 L.Ed.2d 136 (1979). However, the extent to which a debtor's interest in property creates "property of the estate" for turnover purposes is a question of federal law. *In re Bryn Athyn Investors, Ltd.,* 69 B.R. 452, 456 (Bankr.E.D.N.C.1987) (citing *U.S. v. Whiting Pools, Inc.,* 462 U.S. 198, 103 S.Ct. 2309, 76 L.Ed.2d 515 (1983)).

■■■■ Deposits in a bank to the credit of a debtor become property of the estate under section 541(a)(1). 4 Collier on Bankruptcy, ¶ 541.11 at 541–74 (15th ed. 1992). Funds deposited into a bank account are presumed to belong to the entity in whose name the account is established. *Multi–Clean Products, Inc. v. Kasper,* 3 Ill.App.3d 12, 279 N.E.2d 111, 113 (1971); 9 C.J.S. *Banks and Banking* § 285 (1938). It is undisputed that the concentration account was established exclusively in Amdura's name and Amdura has always owned and controlled it. In addition, Amdura possesses all legally cognizable indicia of ownership to the concentration funds. Amdura booked all interest earned on the account. Neither Amdura nor its subsidiaries attempted to segregate any of the concentration account deposits. Amdura used the concentration funds to pay its own obligations and those of its subsidiaries. In addition, the net amount which an Amdura subsidiary advanced to the concentration account did not set the limit of funds which, at any given time, Amdura would advance on that subsidiary's behalf from the concentration account. Furthermore, no agreements existed restricting Amdura's use of the concentration account's commingled funds. Accordingly, I conclude that Andco fails to present any genuine issue of fact sufficient to rebut the presumption that the concentration funds belonged to Amdura as of the petition date. Therefore, as a matter of law, Andco is not entitled to the disputed funds under § 542.

### IV.

Andco seeks reversal of the trial court's order on the grounds that the court erred by failing to hold that a genuine dispute exists as to material facts or, in the alternative, that a constructive trust should be imposed for Andco's benefit. As for the factual question, Andco contends that the trial court erred by failing to determine the exact amount in the concentration account on the petition date. This argument is without merit because Andco's own summary judgment motion evidence, corroborated by Amdura's evidence, establishes the balance in the concentration account as of the petition date at $3,625,000. *See* Andco's cross-motion, p. 5 and Ledger Balance attached as exhibit C.

■■■■ Furthermore, at issue here is not the amount of money in the account, but ownership to it. Once the trial court determined that Andco is unable to prove that it is entitled to turnover of funds pursuant to § 542, the court was correct in concluding its analysis. At that juncture, the amount of money in the concentration account on the petition date was an immaterial fact and, hence, even if disputed, fails to preclude summary judgment in Amdura's favor. Fed. R.Civ.P. 56(c).

Next, Andco contends that the trial court erred in rejecting its arguments that it is entitled to the disputed funds under a con-

structive trust theory. According to Andco, there are three theories under which a constructive trust could be imposed in this case. The first theory is based upon a principal/agent relationship between the parties. The second theory is based upon the trust fund doctrine. The third theory is that Amdura, as Andco's parent, abused its confidential relationship with Andco. As a matter of law, none of these theories support the imposition of a constructive trust.

First, I address Andco's argument that Amdura was acting as its agent in controlling and maintaining the concentration account. Section 541 of the bankruptcy code provides, among other things, that "property of the estate" does not include "any power that the debtor may exercise solely for the benefit of an entity other than the debtor ...". 11 U.S.C. 541(b)(1). No principal/agency relationship exists where, as here, the purported agent is *not* subject to the alleged principal's control. *See Montana v. Land Title Guarantee Co.*, 778 P.2d 328, 331 (Colo.App.1989).

Amdura was Andco's sole owner. It controlled Andco's business affairs along with its other subsidiaries. Amdura always maintained exclusive control over the concentration account funds. It held the account in its own name, and kept the income earned on the account in its own name.

No attributes of control ran upstream from Andco to Amdura. Amdura, the purported agent, was *not* subject to Andco's control. *See Montana*, 778 P.2d at 331. Therefore, I conclude that no principal/agency relationship existed between the parties. Accordingly, imposition of a constructive trust on this ground is improper.

Next, Andco argues that under the "trust fund doctrine" it is entitled to the disputed funds. The Tenth Circuit adopted the trust fund doctrine in *U.S. v. Van Diviner*, 822 F.2d 960 (10th Cir.1987) holding that:

> Under the trust fund doctrine, the assets of an insolvent or dissolved corporation constitute a trust fund for the benefit of creditors, and an equitable action may be brought against a stockholder or distributee when the assets of the dissolved or insolvent corporation are distributed without affording an opportunity for creditors to present and enforce claims.

*Id.* at 965. The trust fund doctrine was developed to protect creditors who are otherwise without a remedy. *Bowers–Siemon Chemicals Co. v. Bowers (In re Bowers–Siemon Chemicals Co.)*, 139 B.R. 436, 450 (Bankr.N.D.Ill.1992). Andco fails to provide any legal authority to support its proposition that this doctrine applies where a debtor has filed a bankruptcy petition. Furthermore, in this case, the disputed funds were not distributed without affording Andco an opportunity to enforce its claims through the bankruptcy process. Therefore, as in *Bowers*, I conclude that the purpose of the trust fund doctrine is satisfied and the doctrine does not apply here. *See, e.g., Bowers*, 139 B.R. at 450 (holding that the trust fund doctrine was inapplicable where the corporation had filed bankruptcy).

Andco's third theory for imposing a constructive trust is that Amdura, as Andco's parent, abused its confidential relationship with Andco. A constructive trust is an equitable remedy devised to prevent unjust enrichment and compel restitution of property that in equity and good conscience does not belong to the defendant. *In re Western Urethanes, Inc.*, 61 B.R. 243, 245 (Bankr.D.Colo.1986) (quoting *In re Specialized Installers, Inc.*, 12 B.R. 546, 553 (Bankr. D.Colo.1981)). It is granted in limited circumstances where there is no actual trust relationship. *Id.* It is undisputed that the concentration account was not subject to any actual trust agreement.

In general, "a constructive trust is imposed because the person holding the title to property would profit by a wrong or would be unjustly enriched if he were permitted to keep the property". *Mancuso v. United Bank of Pueblo*, 818 P.2d 732, 737 (Colo.1991) (quoting Restatement (Second) of Trusts, ch. 12, introductory note at 326 (1959)). The doctrine of constructive trusts is extremely flexible. *Id.* Some instances in which a constructive trust may be imposed are when property is obtained by fraud, du-

ress, or abuse of confidential or fiduciary relationship. *Id.* To justify the imposition of a constructive trust, "something more than a mere creditor-debtor relationship" must be proved. *Western Urethanes,* 61 B.R. at 246. A relationship of trust and confidence must have existed between the parties. *Id.* In Colorado, a confidential relationship arises when one party justifiably reposes confidence in another. *Id.* For example, a transferor of property must be justified in his belief that the transferee acts in his best interest. *Id.*

 The burden of proving the existence of the confidential relationship is upon the party claiming the existence of such a relationship. *Page v. Clark,* 197 Colo. 306, 592 P.2d 792, 798 (Colo.1979). Accordingly, in order for Andco to prevail upon its request to impose a constructive trust based upon its relationship with Amdura, the evidence must give rise to a reasonable inference that Andco was justified in its belief that Amdura would act in its best interest.

Andco's contention that something more than a creditor-debtor relationship existed between it and Amdura and it was justified in believing that Amdura would act in its best interest is premised on the following reasoning. Amdura was Andco's sole parent. Wayne Waldera, Amdura's president and chief executive officer, was Andco's sole director. Andco depended on Amdura to provide various services, including executive management, personnel, accounting, tax, payroll, legal, risk management, and treasury functions. Amdura was privy to all of Andco's financial information and participated in virtually every important aspect of Andco's business. Amdura's objective must have been to maximize Andco's profitability since Andco was one of its subsidiaries.

 Since this case comes before me on summary judgment, I resolve all doubts as to whether an issue of fact exists against the moving party. Although the trier of fact may find this evidence ultimately unpersuasive as to whether a confidential relationship existed, a reasonable inference may be drawn to that effect. Therefore, I disagree with the bankruptcy court's conclusion that no confidential relationship existed between the par-

ties as a matter of law. However, my analysis does not end here.

 Assuming arguendo a confidential relationship between the parties, Amdura must have abused that confidential relationship or be enriched unjustly to warrant the imposition of a constructive trust. *Mancuso,* 818 P.2d at 737. As the parent of several subsidiaries, Amdura was responsible for maximizing its investments in its subsidiaries, including Andco. In doing so, Amdura had absolute discretion to deplete the concentration account for the benefit of any one subsidiary without regard to that subsidiary's contribution to the account. Amdura never misappropriated any of the deposits in the concentration account nor were those deposits used in an unreasonable manner. Amdura also did not abuse its position by filing bankruptcy. Furthermore, Amdura deposited $1,333,675 of its own funds into the concentration account post-petition and, like other funds deposited into this account, they were commingled with existing concentration funds. Under these circumstances, which cannot be genuinely disputed, no reasonable trier of fact could conclude that Amdura abused any confidential relationship with Andco or that Amdura was enriched unjustly. Accordingly, as a matter of law, principles of equity and good conscience do not call for the imposition of a constructive trust.

 Amdura contends that Andco lacks standing to request the disputed funds under the trust fund doctrine because Andco is not a creditor or shareholder of Amdura. In addition, Amdura argues that Andco cannot now invoke the trust fund doctrine in substitution of its abandoned creditor claims. According to Amdura, Andco filed an unsecured claim against Amdura as part of the Amdura bankruptcy proceedings which it ultimately released pursuant to a settlement agreement. Andco disputes these contentions. Generally, a federal appellate court does not consider an issue not passed upon below. *Singleton v. Wulff,* 428 U.S. 106, 120, 96 S.Ct. 2868, 2876, 49 L.Ed.2d 826 (1976); *Tucker v. R.A. Hanson Co, Inc.,* 956 F.2d 215, 219 (10th Cir.1992). These arguments were not raised before the bankruptcy court.

Amdura presents no good reason to stray from the general rule. Therefore, whatever their merit, I·decline to address these contentions here.

Accordingly, IT IS ORDERED THAT the decision of the bankruptcy court in granting Amdura's summary judgment motion and denying Andco's cross-motion is AFFIRMED.