Dwight J. MILLER and Deborah D. Miller, Plaintiffs–Appellants,

v.

Roger L. CURRY, Diane M. Curry, Randal Construction, Inc., Joseph R. Rogers, Keith F. Jones, Anna M. Jones, Richard L. Perry, Rae Ann Jackson, John C. Jackson, Peter A. Blatchley, Eva V. Blatchley, and Jeffrey Hayworth, Defendants–Appellants,

and

Allen D. Miller, Beverley B. Miller, Lowell Pierce, Forest View Estates Neighborhood Association, Inc., Forest View Company, Architectural Control Committee for Forest View Estates Neighborhood Association, Inc., Dan Cuvala, Chris Amenson, Doug Bandle, Leslie Pierce, Steve Fogler, Phoebe Fogler, David Buskirk, Ellen Buskirk, Kevin Martin, Christine Martin, Randy Kunkel, Leslie Hennessey, John Caffo, Margaret Caffo, Fiserv Iss & Co., Trustee FBO Raymond E. Giltner, Hugh T. Dipretore, Stephanie R. Dipretore, Donald O. Leffingwell, Joan W. Leffingwell, Keith W. Mattea, Melissa Mattea, Richard Peterson, Tina Peterson, Cuvala Construction, Inc., Sid J. Reyna, Liliana I. Reyna, David W. Ziegler, Janet L. Ziegler, and the State of Colorado Board of Land Commissioners, Defendants–Appellees.

No. 07CA2404.

Colorado Court of Appeals, Div. III.

Jan. 8, 2009.

Ranson & Kane, P.C., Richard P. Ranson, Jason P. Kane, Colorado Springs, Colorado, for Plaintiffs–Appellants and Defendants–Appellants.

Hanes & Schutz, LLC, Patrick A. Hrbacek, Timothy J. Schutz, Colorado Springs, Colorado, for Defendants–Appellees Allen D. Miller, Beverley B. Miller, Lowell Pierce, Forest View Estates Neighborhood Association, Inc., Forest View Company, Architectural Control Committee for Forest View Estates Neighborhood Association, Inc., Dan Cuvala, Chris Amenson, Doug Bandle, Leslie Pierce, Steve Fogler, Phoebe Fogler, David Buskirk, Ellen Buskirk, Kevin Martin, Christine Martin, Randy Kunkel, Leslie Hennessey, John Caffo, Margaret Caffo, Fiserv Iss & Co., Trustee FBO Raymond E. Giltner, Hugh T. Dipretore, Stephanie R. Dipretore, Donald O. Leffingwell, Joan W. Leffingwell, Keith W. Mattea, Melissa Mattea, Richard Peterson, Tina Peterson, Cuvala Construction, Inc., Sid J. Reyna, Liliana I. Reyna, David W. Ziegler, Janet L. Ziegler.

John W. Suthers, Attorney General, David E. Hamrick, Assistant Attorney General, Denver, Colorado, for Defendant–Appellee State of Colorado Board of Land Commissioners.

Opinion by Judge ROMÁN.

In this dispute involving a developer's adherence to the Colorado Common Interest Ownership Act, §§ 38–33.3–101 to –319, C.R.S.2008 (CCIOA), Dwight J. Miller, Deborah D. Miller, Roger L. Curry, and others (collectively, appellants) appeal the trial court's summary judgment in favor of Allen D. Miller and others (collectively, appellees). Appellants also appeal the trial court's order

awarding attorney fees to appellees. We reverse and remand.

## I. Background

On October 10, 2001, a Colorado water court issued a decree defining certain water rights associated with a 160–acre tract (the property) owned by Forest View Company (FVC). The decree stated that FVC "intends to develop such land by partitioning the property into 54 honesties."

On February 21, 2002, the Board of County Commissioners of El Paso County (the Commissioners) approved restrictive covenants and a plat depicting 14 units on the property. The covenants (filing 3) and plat were recorded on May 24, 2002, and re-recorded on June 14, 2002 to correct a typographical error.

A plat entitled "Forest View Estates IV" (plat 4) was approved by the Commissioners on October 18, 2004. Plat 4 depicts 38 additional lots and 2 tracts located on the property and was recorded on January 10, 2005.

Dwight J. Miller and Deborah D. Miller purchased a lot located within filing 3 on August 31, 2005. According to the Millers' complaint, they submitted site plans that were rejected by Forest View Estates Neighborhood Association (HOA).

On April 10, 2007, the Millers initiated this lawsuit alleging that FVC and the HOA were "attempting to wrongfully prohibit [the Millers] from building the home [for which they] previously submitted plans." The Millers sought a declaration that FVA violated certain provisions of the CCIOA.

The Millers filed a motion to amend the complaint to "specifically name and properly align all owners in filing 3." The trial court ordered that while joinder of all property owners in filing 3 was necessary, "neither the Court, nor [the Millers] shall presume the 'side' with which these individuals may wish to align, if any." Therefore, the trial court ordered that the additional homeowners be served as defendants and stated that it would "consider realigning them as Plaintiffs at their request." Roger L. Curry, Diane M. Curry, Randal Construction, Inc., Joseph R. Rogers, Keith F. Jones, Anna M. Jones, Richard L. Perry, Rae Ann Jackson, John C. Jackson, Peter A. Blatchley, Eva V. Blatchley, and Jeffrey Hayworth elected to be aligned as plaintiffs. However, the trial court did not issue an order realigning them. Thus, although they remain listed as defendants on all pleadings, these homeowners actually align with the Millers for purposes of this appeal.

Both parties moved for summary judgment. Appellants' motion claimed that (1) FVA failed to reserve future development rights in the filing 3 covenants, and (2) even if such development rights were properly reserved, FVC never amended the covenants to include plat 4. Appellants requested a declaration that plat 4 is not a part of the HOA, and that FVC must relinquish control over the HOA pursuant to the CCIOA.

The trial court granted summary judgment in favor of appellees, concluding that "the 'declaration' in this case includes the covenants, the water decree, the bylaws and filed plats for [filing 3] and [plat 4], all of which were duly recorded and incorporated by reference." The court also found:

> There is no doubt to the Court, and no doubt to a purchaser of any lot in [filing 3], and later, [plat 4], that an integrated and phased development plan was in existence, with specific boundaries and a defined time period of existence. As such, the Court finds that [plat 4] was at all times expressly included in the Declaration as defined by the statute. Accordingly, there were no future development rights to reserve nor was there a requirement to amend a reserved development right under Section 38–33.3–205(1)(h) of CCIOA.

On appeal, appellants contend the trial court erred in determining that plat 4 was at all times part of the original declaration. Instead, appellants argue that the "subsequent filings" language in filing 3 (which ultimately became the lots defined in plat 4) constitute development rights not properly reserved. We agree that the "subsequent filings" language referenced lots that were not yet created, and therefore, that the language described development rights. Under the CCIOA, development rights must be properly reserved by affixing a time limit

within which the rights must be exercised. Because filing 3—the document that created the development rights—did not include the statutorily required time limit, we conclude FVA failed to properly reserve the development rights.

## II. Standard of Review

Summary judgment is appropriate when the pleadings and supporting documentation demonstrate that no genuine issue of material fact exists and that the moving party is entitled to judgment as a matter of law. C.R.C.P. 56(c); *Martini v. Smith*, 42 P.3d 629, 632 (Colo.2002). Appellate review of a summary judgment is de novo. *Martini*, 42 P.3d at 632.

When interpreting a statute, our primary task is to give effect to the intent of the legislature and adopt the statutory construction that best effectuates the purposes of the legislative scheme, looking first to the plain language of the statute. *Ceja v. Lemire*, 154 P.3d 1064, 1066 (Colo.2007); *Bob Blake Builders, Inc. v. Gramling*, 18 P.3d 859, 862 (Colo.App.2001). Words and phrases are to be construed according to their generally accepted meaning, *Kruse v. Town of Castle Rock*, 192 P.3d 591, 597 (Colo.App.2008), and "[w]hen the statutory language is clear and unambiguous, we interpret the statute as written because the General Assembly is presumed to have meant what it plainly said." *Silverview at Overlook, LLC v. Overlook at Mt. Crested Butte Ltd.*, 97 P.3d 252, 255 (Colo.App.2004). Interpretation of a statute is a question of law that we review de novo. *In re Marriage of Ciesluk*, 113 P.3d 135, 141 (Colo.2005).

## III. The CCIOA

The CCIOA was enacted in 1991 "to establish a clear, comprehensive, and uniform framework for the creation and operation of common interest communities." § 38–33.3–102(1)(a), C.R.S.2008; *Giguere v. SJS Family Enterprises, Ltd.*, 155 P.3d 462, 467 (Colo.App.2006). The CCIOA governs how a common interest community is created, altered, and terminated, §§ 38–33.3–201 to–223, as well as how such a community is managed, §§ 38–33.3–301 to –319, C.R.S.2008. The General Assembly recognizes "the policy of this state to give developers flexible development rights *with specific obligations* within a uniform structure of development." § 38–33.3–102(1)(c), C.R.S.2008 (emphasis added).

### A. Indexing

Appellants contend FVA failed to properly index plat 4 as required under section 38–33.3–201, C.R.S.2008, and therefore, it cannot be part of the declaration. This contention was not raised in the trial court. Although an appellate court has some discretion to entertain arguments not properly preserved below, *see Roberts v. Am. Family Mut. Ins. Co.*, 144 P.3d 546, 550 (Colo.2006), we conclude that this is not one of those cases.

### B. Whether the "Subsequent Filings" Language Created Development Rights

Appellants contend the "subsequent filings" language used in filing 3 referenced development rights, and as such, had to be properly reserved under the CCIOA. We agree.

Section 38–33.3–201(1), C.R.S.2008, provides in pertinent part: "A common interest community may be created pursuant to this article only by recording a declaration executed in the same manner as a deed.... No common interest community is created until the plat or map for the common interest community is recorded."

" 'Declaration' means any recorded instruments however denominated, that create a common interest community, including any amendments to those instruments and also including, but not limited to, plats and maps." § 38–33.3–103(13), C.R.S.2008. "The declaration *must* contain," among other things, "[a] description of any development rights and other special declarant rights reserved by the declarant, together with a description sufficient to identify the real estate to which each of those rights applies and the time limit within which each of those rights must be exercised." § 38–33.3–205(1)(h), C.R.S.2008 (emphasis added).

As applicable here, " '[d]evelopment rights' means any right or combination of rights

reserved by a declarant in the declaration to . . . [c]reate units, common elements, or limited common elements within a common interest community." § 38–33.3–103(14)(b), C.R.S.2008. A "'[u]nit' means a physical portion of the common interest community which is designated for separate ownership or occupancy and the boundaries of which are described in or determined from the declaration." § 38–33.3–103(30), C.R.S.2008.

Here, filing 3 contains three separate indicators that FVA may create additional units. First, the title of the document is "FILING 3 and Subsequent Filings." Second, the recitals state that the covenants "apply to lots one (1) through fourteen (14), inclusive in a 40.104 acre subdivision on these State Lands known as FOREST VIEW ESTATES FILING No. 3, and to subsequent filings totaling approximately fifty four (54) lots, within the above described lands." Finally, item number 27 of the declaration, entitled "future filings," states: "Future filings of Forest View Estates are anticipated by Declarant and if implemented . . . any lot owners in subsequent filings shall become members of the FVA and all lot owners agree hereto."

██ The language used in filing 3 demonstrates that, while additional lots were then anticipated, those lots were not yet a part of the association or the filing, and had yet to be created. For example, provision 27 in filing 3 states that future filings are anticipated and "*if* implemented" will become part of the HOA. *See Points v. Points,* 312 Ky. 348, 227 S.W.2d 913, 915 (1950) ("if" is a conditional term meaning "in the event" or "in case that").

Likewise, the current and subsequent filings indicated in filing 3 total "approximately" 54 lots. Because these lots were not in existence at the time filing 3 was recorded, they had yet to be created. As such, they represent units that could be created in the future and fall under the definition of "development rights." *See* § 38–33.3–103(14)(b) (defining "development rights" as "rights reserved by a declarant in the declaration to . . . [c]reate units").

In addition, the plat filed simultaneously with filing 3 depicts the 14 lots and 40.104 acres described in filing 3. The plat does not include the other approximately 40 lots referenced by the "subsequent filing" language in filing 3. Nor does it include reference to any of the lots later created in plat 4. The absence of the plat 4 lots at the time filing 3 was recorded also supports the conclusion that the plat 4 lots were not in existence at that time.

We thus reject appellees' assertion and the trial court's finding that the reference to the total anticipated lots in the water decree and filing 3 meant that plat 4 "was at all times expressly included in the Declaration as defined by the statute." In fact, in order to create development rights, the CCIOA expressly requires that a declaration contain both (1) "[a] statement of the maximum number of units that the declarant reserves the right to create," and (2) "a description sufficient to identify the real estate to which each [development or other special declarant right] applies." § 38–33.3–205(1)(d) & (h), C.R.S.2008. Therefore, the fact that FVA identified lots that it anticipated adding in the future does not mean that those lots were included in filing 3 at its inception. Rather, when FVA indicated its intent to create the additional lots later identified in plat 4, it was required to include a statement in filing 3 describing the property associated with the "subsequent" filings. *Id.* Contrary to the trial court's findings, the reference to these "subsequent filings" bolsters our conclusion that that language falls under the statutory definition of "development rights."

Finally, we reject appellees' reliance on the 2007 amendments to the CCIOA, following *Snowmass Land Co. v. Two Creeks Homeowners' Ass'n,* 159 P.3d 662 (Colo.App.2006), as support for their argument that plat 4 was automatically and at all times included in the declaration. The amended language at issue states, "The requirements of this section shall be deemed satisfied so long as all of the information required by this section is contained in the declaration, a map or a plat, or some combination of any two or all of the three." § 38–33.3–209(1), C.R.S.2008. That provision also states, "A plat or map is a part of the declaration and is required for all common interest communities except cooperatives." *Id.* Although we agree with FVA's

assertion that "more than one document may constitute a 'declaration' under CCIOA," we conclude that, for reasons already discussed, plat 4 is not part of the original declaration. Indeed, once a development right is properly executed, it becomes part of the declaration. *See* § 38–33.3–210(1), C.R.S.2008 (requiring declarant to prepare, execute, and record an amendment in order to exercise a development right); *see also* § 38–33.3–103(13) (defining a declaration to include "any amendments" to previously recorded instruments). If the development rights here had been properly reserved and the declaration properly amended, they would have become part of the declaration. However, as we now discuss, the development rights were not properly reserved and, therefore, never became part of the declaration.

### C. Time Limit for Development Rights

■ Because we agree with appellants that the "subsequent filings" language represents development rights, we next address whether filing 3 properly reserved those development rights by including an appropriate time limit. In particular, we consider as a matter of first impression whether a covenant provision that automatically extends the applicability of covenants for successive periods of ten years, after an initial term of twenty-five years, falls within the CCIOA's definition of "time limit." We conclude that it does not.

To reiterate, the CCIOA requires that the declarant reserve development rights and also include a "time limit within which each of those rights must be exercised." § 38–33.3–205(1)(h); *see Silverview,* 97 P.3d at 255–56 (the time limit for development rights in the CCIOA is mandatory and failure to include such limit is not an insubstantial defect).

Here, provision 25 of filing 3, entitled "term of covenants," states:

These covenants and restrictions are to run with the land and shall remain in full force and effect for twenty-five (25) years from the date these covenants are recorded, after which time said covenants shall be automatically extended for successive periods of ten (10) years unless an instrument signed by a simple majority of the then owners of the lots (one vote per lot) has been recorded, changing said covenants in whole or part. . . .

Where, as here, a provision is automatically renewable indefinitely, the provision cannot be considered a time limit. This is because the generally accepted meaning of a limit is the outer boundary within which some event must occur. *See In re Michael S.,* 282 Wis.2d 1, 29, 698 N.W.2d 673, 687 (2005) (" 'Time limits' are those constraints that require action within a set period of time."). By its definition, a limit is something that has an end. *See Webster's Third New International Dictionary* 1312 (2002) (defining "limit" as "the utmost extent: a point beyond which it is impossible to go"); *Black's Law Dictionary* 939 (8th ed.2004) (defining "limit" as "a boundary or defining line"). The definition is understood in other common areas of the law which require limits, such as a statute of limitations. *See Black's Law Dictionary* at 1422 (a statute of limitations is "a statute establishing a time limit for suing in a civil case . . . [or] for prosecuting a crime").

Additionally, the General Assembly intended that the time limit be mandatory. *See Silverview,* 97 P.3d at 255 (noting the mandatory connotation of the term "must" within § 38–33.3–205(1)(h)). The mandatory language in this provision applies both to the requirement that a declaration "must contain" a description of development rights *and* to the time limit, within which such rights "must be exercised." *Id.* (emphasis added).

This legislative intent is underscored by section 38–33.3–210(5), C.R.S.2008, which states:

If a declarant fails to exercise any development right within the time limit . . . that development right shall lapse unless the association, upon the request of the declarant or the owner of the real estate subject to [the] development right, agrees to an extension of the time period for exercise of the development right. . . .

Unlike the automatic extension language in filing 3, which states that the covenants automatically renew unless a majority of the lot

owners vote to change the covenants, the CCIOA states that the development right lapses unless the HOA approves an extension. Such limitation is important:

> The time limit informs the unit owners of the period within which they may expect further development of the project. Unit owners can reasonably expect to have input as to whether and upon what conditions development rights may be exercised after the specified time limit has expired.

*Silverview,* 97 P.3d at 256.

Here, the covenants fail to inform unit owners of the period within which they might expect further development because the time for development is extended indefinitely. Accordingly, the covenants fail to impose any limit.

Accordingly, filing 3 violates the CCIOA's requirement that development rights be subject to a time limit. Therefore, we conclude FVA failed to properly reserve its development rights.

### D. Estoppel and Laches

Alternatively, appellees contend that appellants are estopped from asserting any breach of the CCIOA because they sat by idly while FVA developed and sold many of the plat 4 lots. They cite no authority for the contention, but we presume they are referring to the doctrine of laches.

■ Laches is a form of estoppel that permits a court to deny a party equitable relief. *Manor Vail Condominium Ass'n v. Town of Vail,* 199 Colo. 62, 604 P.2d 1168 (1980). "As an equitable defense, it is committed to the sound discretion of the trial court...." *Bristol Co. v. Osman,* 190 P.3d 752, 755 (Colo.App.2007). Because the trial court granted summary judgment without addressing appellees' defense, that defense should be considered on remand.

If the trial court determines that the defense of laches is not applicable, then it should order the development rights in filing 3 void ab initio. *See Silverview,* 97 P.3d at 257.

### IV. Attorney Fees

Finally, because the trial court's award of attorney fees was based upon its entry of summary judgment, that award must also be reversed. *See Gleneagle Civic Ass'n v. Hardin,* 205 P.3d 462 (Colo.App. No. 07CA1918, Oct. 16, 2008).

Based on this disposition, we need not address the remaining issues raised by the parties.

The judgment of the trial court and its order awarding attorneys fees are reversed, and the case is remanded for further proceedings consistent with this opinion.

Judge CASEBOLT and Judge LOEB concur.