COLORADO COURT OF APPEALS

 
 2016 COA 51

 
 

 

Court of Appeals No. 14CA2073
Office of Administrative Courts
Case No. OS 2014-0008

Campaign Integrity Watchdog,

Plaintiff-Appellant,

v.

Coloradans for a Better Future,

Respondent-Appellee,

and

Office of Administrative Courts,

Appellee. 

ORDER AFFIRMED IN PART, REVERSED IN PART,
AND CASE REMANDED WITH DIRECTIONS 

Division I
Opinion by JUDGE TAUBMAN
J. Jones and Harris, JJ., concur

Announced April 7, 2016

Matthew Arnold, Denver, Colorado, Authorized Representative of Campaign Integrity Watchdog

Cynthia H. Coffman, Attorney General, Frederick R. Yarger, Solicitor General, Matthew D. Grove, Assistant Solicitor General, Denver, Colorado, for Amicus Curiae

¶1       This is the fourth in a series of complaints brought by claimant, Campaign Integrity Watchdog (CIW), or its principal officer, Matthew Arnold, against Coloradans for a Better Future (CBF), a political organization under section 1-45-103(14.5), C.R.S. 2015, to challenge CBF’s alleged failure to report contributions and spending. In 2012, Arnold lost the Republican primary election for University of Colorado Regent to Brian Davidson. During the runup to the primary election, CBF purchased a radio advertisement supporting Davidson and other radio advertisements containing messages unfavorable to Arnold. After the election, Arnold, and later CIW with Arnold as its principal officer, filed a series of complaints with the Colorado Secretary of State (Secretary) alleging violations of the Fair Campaign Practices Act (FCPA).

¶2       CIW now appeals the decision of the administrative law judge (ALJ) concluding that no reporting violations for both billed and donated legal services had been established on the part of CBF.[1] Specifically, CIW challenges CBF’s spending on legal fees in 2012 and 2013, as well as donated legal services in 2013 and 2014. We affirm in part, reverse in part, and remand to the AUJ for further proceedings.

I. Background

¶3       CIW appeals the rejection of its fourth complaint against CBF. In the first complaint, Arnold v. Coloradans for a Better Future, No. OS 2012-0024 and No. OS 2012-0025 (O.A.C. Jan. 11. 2013), the AUJ imposed a penalty of $4525 for CBF’s failure to report certain electioneering communications.

¶4       In the second complaint, Arnold v. Coloradans for a Better Future, No. OS 2013-0007 (O.A.C. Dec. 26, 2013), Arnold alleged that CBF did not report in April 2013 the legal services it received to defend the first case as either contributions or expenditures. An AUJ found that Arnold did not prove any violation because there was no evidence that CBF paid for legal services as part of any express advocacy. A division of our court affirmed in Arnold v. Coloradans for a Better Future, (Colo. App. No. 14CA0122, Feb. 5, 2015) (not published pursuant to C.A.R. 35(f)).[2]

¶5       In the third complaint, Campaign Integrity Watchdog v. Coloradans for a Better Future, No. OS 2014-004 (O.A.C. Feb. 25, 2015), CIW alleged that CBF failed to accurately report contributions it had received and expenses it had incurred to pay Arnold’s court costs from an earlier case. The case was continued pending CBF’s response to a subpoena duces tecum.

¶6       In the fourth and present case, CIW alleges that CBF did not report in April 2013, July 2013, October 2013, and January 2014 legal services it had received as either contributions or spending. An AUJ held a hearing on September 2, 2014, at which CBF did not appear. Nevertheless, the AUJ found in favor of CBF.

¶7       CBF did not file an answer brief in this appeal, but the Secretary filed a brief as amicus curiae in support of the ALJ’s ruling.

II. Mootness

¶8 We ordered CIW and the Secretary to show cause why we should not dismiss the appeal as moot. The record indicates that CBF was terminated[3] as a political organization on March 6, 2014 (before the ALJ issued his decision), and it was not clear to us that there was any practical relief that we could afford the organization if CIW were to prevail on appeal. Accordingly, we must first address whether this appeal is moot.

A. Applicable Law

¶9       A political organization may only terminate by filing a termination report if the organization’s TRACER[4] account has a zero balance, indicating that it has no cash or assets on hand and that there are no outstanding debts, penalties, or obligations. Dep’t of State Reg. 1505-6, 8 Colo. Code Regs. 1505-6:12.

¶10       We normally refrain from addressing issues that have become moot because any opinion would not have a practical effect on an alleged controversy. Trinidad Sch. Dist. No. 1 v. Lopez By & Through Lopez, 963 P.2d 1095, 1102 (Colo. 1998).

B. Analysis

¶11       CIW contends that to conclude that a political organization that had filed a termination report could not be sued would lead to the absurd result that entities which were potentially liable for violating the FCPA could escape accountability by "terminating." We agree. Although CBF terminated its existence as a political organization before CIW filed its fourth complaint, we conclude the appeal is not moot.

¶12       The primary campaign finance law in Colorado is Article XXVIII of the Colorado Constitution, which was approved by the voters in 2002. Article XXVIII imposes contribution limits, as well as reporting and disclosure requirements, and creates an enforcement process for violations of its provisions. Colorado also has the FCPA, §§ 1-45-101 to -118, C.R.S. 2015, which was originally enacted in 1971, repealed and re-enacted by initiative in 1996, substantially amended in 2000, and again substantially revised by initiative in 2002 as the result of the adoption of Article XXVIII. The Secretary further regulates campaign finance practices. See Dep’t of State Reg. 1505-6, 8 Code Colo. Regs. 1505-6.

¶13       Neither the regulations nor the Colorado Campaign and Political Finance Manual, a manual produced by the Secretary which provides guidelines for proper compliance with campaign finance laws in Colorado, permits an entity to avoid potential liability for campaign finance violations by filing a termination report. See Colo. Sec. of State, Colorado Campaign and Political Finance Manual 34-35 (rev. July 2015), https://perma.cc/D792-UDVK; see also Dep’t of State Reg. 1505-6, 8 Code Colo. Regs. 1505-6:4.4 (issue committees); 1505-6:12.3 (committees generally); 1505-6:18 (application penalties and violations for failure to comply). While the regulations and the manual only apply the term "terminate" to candidates, candidate committees, and issue committees, the Secretary has applied "terminate" to political organizations, and we will do the same.

¶14       The Secretary notes that he routinely refers complaints filed against terminated entities to the Office of Administrative Courts (OAC), and the OAC typically resolves those cases on the merits. Indeed, section 9(2)(a) of article XXVIII states that "[a]ny person . . . may file a written complaint with the secretary of state no later than one hundred eighty days after the date of the alleged violation" and makes no distinction between active entities and terminated ones. While penalties imposed against a terminated political organization may prove difficult to collect, they are not mooted by a political organization’s termination. Cf. W. Spring Serv. Co. v. Andrew, 229 F.2d 413, 420 (10th Cir. 1956) (under Colorado law, judgment against dissolved partnership is permissible). Concluding the appeal is not moot, we turn to the merits of the appeal.

III. Interpretation of Article XXVIII and FCPA

¶15       CIW raises two contentions on appeal: (1) the AUJ erred when he concluded that CBF did not need to report certain legal services as spending and (2) the AUJ erred when he concluded that CBF only needed to report contributions that were for the purpose of promoting a candidate’s nomination or election. We disagree with the first contention but agree with the second.

A. Standard of Review

¶16       We review de novo (1) statutory provisions, Bryant v. Cmty. Choice Credit Union, 160 P.3d 266, 274 (Colo. App. 2007); (2) constitutional provisions, Rocky Mountain Animal Def. v. Colo. Div. of Wildlife, 100 P.3d 508, 513 (Colo. App. 2004); and (3) an administrative agency’s conclusions of law, Specialty Rests. Corp. v. Nelson, 231 P.3d 393, 392 (Colo. 2010).

B. Principles of Interpretation

¶17       We first determine whether statutory language or a constitutional provision has a plain and unambiguous meaning. In re Great Outdoors Colo. Tr. Fund, 913 P.2d 533, 538 (Colo. 1996); Fischbach v. Holzberlein, 215 P.3d 407, 409 (Colo. App. 2009).

¶18       "The plainness or ambiguity of statutory language is determined by reference to the language itself, the specific context in which that language is used, and the broader context of the statute as a whole." Robinson v. Shell Oil Co., 519 U.S. 337, 340 (1997). We read the statutory scheme as a whole to give "consistent, harmonious, and sensible effect to all parts of the statute." Salazar v. Indus. Claim Appeals Office, 10 P.3d 666, 667 (Colo. App. 2000). We will not adopt a statutory interpretation that leads to an illogical or absurd result or is at odds with the legislative scheme. Bryant, 160 P.3d at 274.

¶19       Our duty in interpreting a constitutional amendment is to give effect to the electorate’s intent in enacting the amendment. Davidson v. Sandstrom, 83 P.3d 648, 654 (Colo. 2004). We must give words their ordinary and popular meanings to ascertain what the voters believed the amendment to mean when they adopted it. Havens v. Bd. of Cty. Comm’rs, 924 P.2d 517, 522 (Colo. 1996).

C. Spending and Expenditures

¶20       The ALJ found that CBF either spent money on legal services in 2012 or 2013 for defending the previous campaign finance complaints or "had a contractual obligation to pay [its attorney’s] invoices" during that time. CBF did not report any of this spending. However, the ALJ concluded that the FCPA did not define spending, applied the definition of expenditure, and concluded that the money spent on legal fees fell outside of that category because it followed the primary election for University of Colorado regent and therefore was not reportable.

¶21       CIW contends that the money CBF spent on legal fees was reportable. We disagree.

1. Applicable Law

¶22       A political organization must disclose "[a]ny spending by the political organization that exceeds twenty dollars in any one reporting period." § 1-45-108.5(1)(b), C.R.S. 2015.

¶23       The FCPA defines spending as

funds expended influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any state or local public office in the state and includes, without limitation, any purchase, payment, distribution, loan, advance, deposit, or gift of money or anything else of value by any political organization, a contract, promise, or agreement to expend funds made or entered into by any political organization, or any electioneering communication by any political organization.

§ 1-45-103(16.5).

¶24       The Colorado Constitution defines expenditure as

any purchase, payment, distribution, loan, advance, deposit, or gift of money by any person for the purpose of expressly advocating the election or defeat of a candidate or supporting or opposing a ballot issue or ballot question. An expenditure is made when the actual spending occurs or when there is a contractual agreement requiring such spending and the amount is determined.

Colo. Const. art. XXVIII, § 2(8).

2. Analysis

¶25       CIW argues that because political organizations are required to report and disclose any spending in excess of twenty dollars in a reporting period, the AUJ erred in ruling that CBF did not commit any reporting violations. We disagree.

¶26       First, the AUJ erred in concluding that "spending" is not defined in the FCPA. Spending is defined as quoted above in section 1-45-103(16.5).

¶27       CIW and the Secretary both argue that money spent by a group that is formed with the express purpose of influencing political campaigns is, by definition, unambiguously campaign related. We disagree. First, we note that neither CIW nor the Secretary attempted to define "campaign related," a term not used in section 1-45-103(16.5). Second, the definition of spending has two parts. The first limits covered spending to spending for a particular purpose, specifically expending funds to influence or attempt to influence "the selection, nomination, election, or appointment of any individual to any state or local public office in the state." § 1-45-103(16.5). Only if this purpose is met do we turn to the second part of the definition to determine if the spent funds were spent in a manner covered by the definition — that is, by "purchase, payment, distribution, loan, advance, deposit, or gift of money or anything else of value by any political organization, a contract, promise, or agreement to expend funds made or entered into by any political organization, or any electioneering communication by any political organization." Id.

¶28       Both CIW and the Secretary misapprehend the definition of spending because they focus on the "means" part of the definition and disregard the "purpose" part of the definition. They focus on the broad language in the statute as to what constitutes spending and overlook the "purpose" part of the FCPA’s spending definition, which establishes the parameters of that term.

¶29       We recognize that CBF was registered as a political organization under section 1-45-103. There can be no dispute that political organizations are formed for the purpose of engaging in political speech. § 1-45-103(14.5) (A "political organization" is defined as one that is "engaged in influencing or attempting to influence the . . . election . . . of any individual to . . . public office."). However, while a political organization exists for the sole purpose of influencing elections, not all spending by a political organization is necessarily spent to influence or attempt to influence an election. See Shays v. Fed. Election Comm’n, 511 F. Supp. 2d 19, 30 (D.D.C. 2007) ("A 527 group, by definition, has the ‘primary’ purpose of raising or spending money to influence the election or appointment of an individual to a political office.").

¶30       Here, CBF spent money on legal services in 2012 or 2013 to defend the previous campaign finance complaints or "had a contractual obligation to pay [its attorney’s] invoices" during that period. The funds were not "expended influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any state or local public office in the state." See § 1-45-103(16.5). Therefore, we conclude the money CBF spent on legal fees did not constitute reportable spending. See Ryan Ranch Cmty. Ass’n, Inc. v. Kelley, 2014 COA 37M, ¶52, ___ P.3d ___, ___ ("[W]e may affirm a correct judgment for any reason supported by the record.") (cert. granted June 29, 2015).

D. Contributions

¶31       The AUJ concluded that an attorney "rendered some amount of legal service to [CBF] in January 2014 for which he did not bill[.]" An attorney either donated legal services to CBF to prepare contribution and expenditure reports in late 2013 and early 2014 or he or she billed for, but did not collect on, legal services to CBF.[5] Applying article XXVIII, section 2(5)(a)(IV), the AUJ ruled that, to prevail, CIW needed to prove that the legal services were donated for the purpose of promoting a candidate’s nomination or election. The AUJ then concluded that the legal services were not reportable in-kind contributions because they were donated after the 2012 election, and thus could not have been provided with the intent to promote the election of a candidate.

¶32       CIW contends the AUJ erred when he concluded that CBF needed to report only contributions that were for the purpose of promoting a candidate’s nomination or election. CIW argues that the legal services constituted reportable contributions, and CBF therefore violated disclosure and reporting requirements. We agree.

1. Applicable Law

¶33       The FCPA defines "political organization," as relevant here, as

a political organization defined in section 527(e)(1) of the federal "Internal Revenue Code of 1986," as amended, that is engaged in influencing or attempting to influence the selection, nomination, election, or appointment of any individual to any state or local public office in the state and that is exempt, or intends to seek any exemption, from taxation pursuant to section 527 of the internal revenue code.

§ 1-45-103(14.5).

¶34       Under the Internal Revenue Code, a political organization is "organized and operated primarily for the purpose of . . . influencing or attempting to influence" an election. 26 U.S.C. § 527(e)(1)-(2) (2012).

¶35       A political organization must disclose "[a]ny contributions it receives, including . . . each person who has contributed twenty dollars or more to the political organization in the reporting period, and . . . each natural person who has made a contribution of one hundred dollars or more to the political organization[.]" § 1-45-108.5(1)(a), C.R.S. 2015.

¶36       Contributions are defined in the Colorado Constitution:

(a) "Contribution" means:

(I) The payment, loan, pledge, gift, or advance of money, or guarantee of a loan, made to any candidate committee, issue committee, political committee, small donor committee, or political party;

(II) Any payment made to a third party for the benefit of any candidate committee, issue committee, political committee, small donor committee, or political party;

(III) The fair market value of any gift or loan of property made to any candidate committee, issue committee, political committee, small donor committee or political party;

(IV) Anything of value given, directly or indirectly, to a candidate for the purpose of promoting the candidate’s nomination, retention, recall, or election. Colo. Const. art. XXVIII, § 2(5)(a).

¶37       The FCPA also defines contribution:

(a) "Contribution" shall have the same meaning as set forth in section 2(5) of article XXVIII of the state constitution.

(b) "Contribution" includes, with regard to a contribution for which the contributor receives compensation or consideration of less than equivalent value to such contribution, including, but not limited to, items of perishable or nonpermanent value, goods, supplies, services, or participation in a campaign-related event, an amount equal to the value in excess of such compensation or consideration as determined by the candidate committee.

(c) "Contribution" also includes:

(I) Any payment, loan, pledge, gift, advance of money, or guarantee of a loan made to any political organization;

(II) Any payment made to a third party on behalf of and with the knowledge of the political organization; or

(III) The fair market value of any gift or loan of property made to any political organization.

§ 1-45-103(6).

2. Analysis

¶38       CIW argues that CBF failed to report the "in-kind" contribution of legal services and that the ALJ erred when he relied on one part of the constitutional definition of contribution, while ignoring the FCPA definition. We agree.

¶39       The ALJ noted that the FCPA adopts the constitutional definition of contribution, and applied section 2(5)(a)(IV) of article XXVIII to conclude that the legal services were not reportable in-kind contributions. But even if the ALJ correctly concluded that subsection (a)(IV) does not apply to the legal services at issue here, we conclude the ALJ erred in not applying other applicable parts of the FCPA definition of contribution.

¶40       As noted, section 1-45-103(6)(a) incorporates the definition of contribution set forth in article XXVIII, section 2(5). While it is true that sections 2(5)(a)(I)-(III) of article XXVIII do not by their terms apply to political organizations, sections 1-45-103(6)(c)(I)-(III) mirror sections 2(5)(a)(I)-(III), expressly applying them to political organizations.[6] Section 1-45-103(6)(b) further explains the definition of contribution under the FCPA. Sections 1-45-103(6)(b) and (c)(I)-(III) do not include any purpose limitation, and therefore must be considered independently of any purpose limitation in section 2(5)(a)(IV).[7]

¶41       We agree with CIW that subsection (b) or (c)(I) of section 1-45-103(6) applies here. As noted above, subsection (b) covers "a contribution for which the contributor receives compensation or consideration of less than equivalent value to such contribution, including, . . . services" and subsection (c)(I) covers "[a]ny . . . gift . . . made to any political organization." It is undisputed that the legal services at issue here were either a gift of services for which less than equivalent value was received (if the services were billed but not paid) or they were pro bono services. Therefore, CBF received a contribution which it was required to report.

IV. Costs and Fees

¶42       CIW requests we award it reasonable costs and fees in bringing this appeal pursuant to section 1-45-111.5(2), C.R.S. 2015. However, section 1-45-111.5(2) does not apply to costs on appeal. Therefore, we deny CIW’s requests for costs and fees.

V. Conclusion

¶43       We affirm the ALJ’s conclusion that CBF did not need to report certain legal services as spending, reverse the ALJ’s conclusion that CBF needed to report only contributions that were for the purpose of promoting a candidate’s nomination or election, and remand to the ALJ for further proceedings consistent with this opinion.

JUDGE J. JONES and JUDGE HARRIS concur.

[1] Pursuant to section 13-1-127(2), C.R.S. 2015, an officer of a closely held entity may represent the entity when: (1) the amount at issue does not exceed fifteen thousand dollars, exclusive of costs, interest, or statutory penalties, on and after August 7, 2013 and (2) the officer provides evidence satisfactory to the court of the officer to appear on behalf of the closely held entity. Arnold responded to an order to show cause from our court, and after he established the requirements of section 13-1-127, the court discharged the order to show cause. Therefore, although Arnold is not an attorney, he is able to represent CIW in this case.

[2] Matthew Arnold formed CIW by filing its Articles of Organization pursuant to sections 7-80-203 and 7-80-204, C.R.S. 2015, in August 2013.

[3] "Terminate," a phrase used by the AUJ, is a term of art in the Secretary’s regulations implementing the FCPA. See Dep’t of State Reg. 1505-6, 8 Code Colo. Regs. 1505-6:4.4 (issue committees); 1505-6:12.3 (committees generally); 1505-6:18 (application penalties and violations for failure to comply); Colo. Sec. of State, Colorado Campaign and Political Finance Manual 34-35 (rev. July 2015), https://perma.cc/D792-UDVK. A political candidate, committee, or organization "terminates" and no longer exists when it files a termination report and meets certain criteria. See Dep’t of State Reg. 1505-6, 8 Code Colo. Regs. 1505-6:4.4 (issue committees); 1505-6:12.3 (committees generally); 1505-6:18 (application penalties).

[4] The Colorado Secretary of State’s Office developed a website called TRACER, an acronym for "Transparency in Contribution and Expenditure Reporting," to increase transparency of the campaign finance system to interested third parties, as well as to increase the efficiency of reporting for political candidates, committees, and organizations. See https://perma.cc/NG2H-2WZH.

[5] From the record, we cannot discern whether the services were pro bono or billed and unpaid.

[6] We note that article XXVIII of the Colorado Constitution was approved by the voters in 2002. The FCPA was amended in 2007 to encompass political organizations as noted in sections 1-45-103 and1-45-108.5, C.R.S. 2015. See Ch. 289, sec. 1, § 1-45-103, 2007 Colo. Sess. Laws 1224; Ch. 289, sec. 3, § 1-45-108.5, 2007 Colo. Sess. Laws 1225.

[7] In this way, the definition of contribution in the FCPA differs from the definition of spending.